**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHIVA STEIN,

    Plaintiff,

v.

CUBIC CORPORATION, BRADLEY H. FELDMANN, DAVID F. MELCHER, PRITH BANERJEE, BRUCE G. BLAKLEY, DENISE L. DEVINE, MAUREEN BREAKIRON-EVANS, CAROLYN FLOWERS, JANICE M. HAMBY, and STEVEN J. NORRIS,

    Defendants.

---

Civil Action No. 21-cv-2091

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Cubic, Inc. ("Cubic or the "Company") and the members Cubic board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Cubic by Atlas CC Acquisition Corp., ("Atlas") a Delaware corporation and an affiliate of The Veritas Capital Fund VII, L.P. (collectively with Atlas, "Veritas").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 8, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Atlas Merger Sub Inc., a Delaware corporation and wholly owned subsidiary of Atlas ("Merger Sub") will merge with and into Cubic with Cubic surviving the merger and becoming a wholly owned subsidiary of Atlas (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Cubic common share issued and outstanding will be converted into the right to receive $70.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Cubic stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") and Raymond James & Associates, Inc. ("Raymond James") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cubic stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Atlas and Veritas are headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Cubic common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Bradley H. Feldmann has served as a member of the Board since and is the Company's President, Chief Executive Officer, and Chairman.

11. Individual Defendant David F. Melcher has served as a member of the Board since and is the Lead Independent Director.

12. Individual Defendant Prith Banerjee has served as a member of the Board since.

13. Individual Defendant Bruce G. Blakley has served as a member of the Board since.

14. Individual Defendant Denise L. Devine has served as a member of the Board since.

15. Individual Defendant Maureen Breakiron-Evans has served as a member of the Board since.

16. Individual Defendant Carolyn Flowers has served as a member of the Board since.

17. Individual Defendant Janice M. Hamby has served as a member of the Board since.

18. Individual Defendant Steven J. Norris has served as a member of the Board since.

19. Defendant Cubic is incorporated in Delaware and maintains its principal offices at 9233 Balboa Avenue, San Diego, California 92123. The Company's common stock trades on the New York Stock Exchange under the symbol "CUB."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

22. Cubic designs, integrates, and operates systems, products, and services for command, control, communications, computers, intelligence, surveillance, and reconnaissance (C4ISR) customers worldwide. The Company operates through three segments: Cubic Transportation Systems (CTS), Cubic Mission Solutions (CMS), and Cubic Global Defense (CGD) Systems. The CTS segment integrates payment and information technology and services for intelligent travel solutions. It also designs, develops, produces, installs, operates, and maintains automated fare payment, traffic management and enforcement solutions, real-time information

systems, and revenue management infrastructure and technologies for transportation agencies. The CMS segment offers networked C4ISR solutions for defense, intelligence, security, and commercial missions. The CGD Systems segment supplies live, virtual, constructive, and game-based training solutions to the U.S. Department of Defense, other U.S. government agencies, and allied nations. The Company was incorporated in 1949 and is headquartered in San Diego, California.

23. On February 8, 2021, Cubic announced that it had entered into a proposed transaction:

> SAN DIEGO--(BUSINESS WIRE)--Cubic Corporation (NYSE: CUB) ("Cubic" or the "Company") today announced that it has entered into a definitive agreement (the "Agreement") with an affiliate of Veritas Capital ("Veritas"), under which Veritas and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Cubic for $70.00 per share in cash.
>
> Under the terms of the Agreement, Cubic shareholders will receive $70.00 in cash for each share of Cubic's common stock they currently hold, representing a premium of approximately 58% to Cubic's unaffected closing stock price on September 18, 2020, the last trading day before the Company's disclosure of third-party interest in potentially acquiring Cubic. The all-cash transaction will be valued at approximately $2.8 billion, including the assumption of debt.
>
> Following the closing of the transaction, the Company will remain based in San Diego, California. The transaction is expected to be seamless for customers and employees across Cubic's businesses.
>
> Bradley H. Feldmann, Chairman, President and Chief Executive Officer of Cubic Corporation, said, "This transaction is in the best interests of our shareholders and provides them with a significant premium and liquidity – while accelerating future growth to the benefit of our employees and customers. Our success in attracting a premier, deeply experienced partner and securing a transaction at this premium reflects the positive momentum of our business. Although last fiscal year brought unprecedented challenges, Cubic was able to build on our strengths, protect our people, serve our customers and deliver a value-maximizing deal for our shareholders. We look forward to partnering with Veritas and remain grateful to our customers for their trust and to our fellow CUBES for their unwavering commitment to delivering innovative, mission-critical solutions."

Ramzi Musallam, CEO and Managing Partner of Veritas, said, "Cubic has an unparalleled history of delivering innovative technology-based solutions to address the mission-critical needs of the global transportation and defense markets. We look forward to leveraging our expertise in the government technology market – a key focus of Veritas since our inception – in partnership with the team at Cubic to accelerate product development and drive growth as Cubic continues to improve the quality of global transportation systems and to deliver innovative defense solutions."

On behalf of Elliott, Jesse Cohn said, "Elliott believes this outstanding transaction maximizes value for Cubic's shareholders, and we are pleased to have engaged constructively with the Company's Board and management to reach this outcome. We look forward to partnering with Veritas and the Cubic team as we work through Cubic's next phase of growth as a private company." Elliott has entered into an agreement to vote its shares in support of the transaction.

**Transaction Details**

The transaction will be financed through a combination of equity and debt financing. The Board of Directors of Cubic has unanimously approved the Agreement and recommends that Cubic shareholders vote in favor of the transaction.

This summary of the Agreement is incomplete, and Cubic encourages shareholders to read the full Agreement included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.

The transaction is expected to close during the second calendar quarter of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

**Advisors**

J.P. Morgan Securities LLC is acting as lead financial advisor to the Company and Sidley Austin LLP and Faegre Drinker Biddle & Reath LLP are acting as the Company's legal counsel. Raymond James & Associates, Inc. provided the Board with an opinion regarding the fairness, from a financial point of view, of the consideration offered to Cubic shareholders.

Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel to Veritas.

Gibson, Dunn & Crutcher LLP is acting as legal counsel to Evergreen.

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Cubic's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25. On March 8, 2021, Cubic filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Cubic Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Cubic management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company and the Financial Advisors prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cubic management provided to the Board and

the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. For Adjusted EBITDA, the Proxy Statement fails to disclose the values for interest expense, loss on extinguishment of debt, income taxes, depreciation and amortization, other non-operating expense, acquisition-related expenses, strategic and information technology ("IT") system resource planning expenses, restructuring costs, and gains or losses on the disposal of fixed assets, and stock-based compensation.

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

32. With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%, (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.5% to 3.0%; and (iv) the Company's estimated net debt as of December 31, 2020; and (v) the number of fully diluted shares of Company common stock.

33. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial benchmarking metrics for each of the transactions observed by J.P. Morgan in its analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) the basis for applying perpetuity growth rates ranging from 2.50% to 3.50%; (iii) the basis for applying discount rates ranging from 9.50% to 10.50%; (iv) the Company's net debt as of September 30, 2020; (v) minority interest less cash; (vi) value of the benefits expected by the Company's management to be derived by the Company from its utilization of estimated net operating loss carryforwards of the Company as provided by the Company's management; and (vii) the fully diluted number of shares of Company common stock.

35. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each transaction observed by J.P. Morgan in the analysis.

36. With respect to Raymond James' *Selected Companies Analysis*, the Proxy Statement fails to disclose the financial multiples other than enterprise value compared to EBITDA calculated by Raymond James in the analysis.

37. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company in 2025; (ii) the basis for applying multiples ranging from 11.0x to 13.0x; (iii) the basis for applying discount rates ranging from 9.5% to 11.5%; (iv) the Company's net debt as of December 31, 2020; (v) management's estimate for the value of its Net Operating Losses; and (vi) the number of diluted shares outstanding of Company common stock.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Cubic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Cubic, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cubic, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cubic, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 10, 2021                               **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, New York 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*